UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NATIONSTAR MORTGAGE, LLC. D/B/A MR.
COOPER,

|                | Plaintiff, | Civil Action No.: |
| -against-      |            | **COMPLAINT** |

FABIOLA MONTISSOL,

"JOHN DOE #1" through "JOHN DOE #12," the
last twelve names being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
premises described in the Complaint,

                          Defendants.
-----------------------------------------------------------------X

Plaintiff, NATIONSTAR MORTGAGE LLC. d/b/a MR. COOPER ("Plaintiff") by and

through its attorneys, RAS Boriskin, LLC brings this action against the Defendants named in the

above styled caption, and for its causes of action alleges and states the following:

1.      This is an action seeking to foreclose a mortgage upon real property commonly

known as 6 Elliot Place, Spring Valley, NY 10977 and known on the County Tax Map as

SECTION: 50.10  BLOCK: 4 LOT: 39 in the County of Rockland, and State of New York (the

"Property").  The Legal Description of the Property is annexed hereto as **Exhibit "A"**.

### JURISDICTION

2.      Jurisdiction of this court lies in diversity of citizenship and the amount in

controversy, without interest and costs, exceeds the sum or value specified by 28 USC §1332.

  

18-131588 -GaM

3.      Plaintiff, NATIONSTAR MORTGAGE LLC. D/B/A MR. COOPER is a National Association organized under the laws of the United States, with its principal place of business at 8950 Cypress Waters Blvd, Coppell, TX 75019.

4.      Defendant, FABIOLA MONTISSOL, is a resident of the State of New York.

5.      The "JOHN DOE" Defendants are persons, parties, corporations or other entities, if any who are presently unknown to Plaintiff, holding or claiming to hold certain leaseholds, tenancies, sub-tenancies, possessory or other interests, including partnership interests, in and to any judgment or liens upon the Property.

6.      Each of the above-named defendants has, claims to have, or may claim to have, some interest in or lien upon the Property, or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of the mortgage that is the subject of this foreclosure action.

## VENUE

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391.  The real property that is the subject of this action is located within the judicial district of this Court.

## FACTUAL BACKGROUND

8.      On April 4, 2005, FABIOLA MONITSSOL ("Borrower") executed a note ("Note") and Mortgage ("Mortgage"), both dated April 4, 2005 in favor of COLUMBIA HOME LOANS, LLC. in the amount of $225,000.00.  A copy of the Note is annexed hereto as **Exhibit "B"**

9.      As security for the Note and Mortgage, FABIOLA MONTISSOL ("Mortgagor") executed a mortgage in favor of COLUMBIA HOME LOANS, LLC., secured by the Property,

18-131588- GaM

dated April 4th , 2005, and recorded in the office of the Clerk/Register of the County of Rockland,

on October 1, 2017 under the Instrument Number 2005-00030427 ("Mortgage").   The applicable

mortgage tax was paid at the time of recording.   A copy of the Mortgage is annexed hereto as

**Exhibit "C"**.

       10.     The Mortgage was assigned to Plaintiff by Assignments of Mortgage as reflected

in the Schedule of Assignments annexed as **Exhibit "D"**.  Copies of the Assignments of Mortgage

are also annexed as **Exhibit "D"**.

       11.     Plaintiff is in physical possession, and is the owner, of said Note and Mortgage.

       12.     Plaintiff has complied with all conditions precedent contained in the mortgage, if

any.

       13.     Plaintiff declares the full amount payable under the note and mortgage to be now

due, pursuant to the terms of the Mortgage.

       14.     FABIOLA MONITSSOL, have failed to comply with the terms and provisions of

the said mortgage and said instrument secured by the Mortgage, by failing to make the Monthly

Payments due on October 1, 2017 and the default continues to date.

       15.     Plaintiff hereby declares that the outstanding principal balance due under the Note,

together with all accrued interest thereon is immediately due and payable.

       16.     To the extent applicable, Plaintiff has complied with all of the provisions of

Banking Law section § 595-A and any rules and regulations promulgated thereunder, Banking

Law sections § 6-1 and 6-M.

       17.     Plaintiff is the owner and holder of said note and mortgage or has been delegated

the authority to institute a mortgage foreclosure action by the owner and holder of the said note

18-131588- GaM

and mortgage.

18.     As of the date herein, FABIOLA MONTISSOL, has failed to respond to the default notices.

19.     That by reason of such defaults, Plaintiff hereby declares the balance of the principal indebtedness immediately due and payable.

20.     Due to the above-described default, the Defendants FABIOLA MONITSSOL is indebted to Plaintiff pursuant to the terms of the note and Mortgage for:

       a.     The unpaid principal amount due under the Note, and all accrued and unpaid interest and late charges which sum as of March 6, 2018 amounts to $172,299.79.

       b.     Attorney's fees and other costs and disbursements, payable to NATIONSTAR MORTGAGE LLC d/b/a MR.COOPER under the terms of the Note, which will accrue until the amount due and payable under the Note is paid in full; and

       c.     Any and all additional fees that are due or may become due and payable as provided under the terms and conditions of the note and Mortgage are paid in full.

21.     Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following:

       a.     Any state of facts that an inspection of the premises would disclose.

18-131588- GaM

      b.      Any state of facts that an accurate survey of the premises would show.

      c.      Covenants, restrictions, easements and public utility agreements of record, if any.

      d.      Building and zoning ordinances of the municipality in which the Mortgaged premises are located and possible violations of same.

      e.      Any right of tenants or person in possession of the subject premises.

      f.      Any equity of redemption of the United States of America to redeem the premises with 120 days from date of sale.

      g.      Prior lien(s) of record, if any.

22.    In the event that Plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other liens(s) shall not be merged in Plaintiffs cause(s) of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

23.    Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinfore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

24.    That plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain

18-131588- GaM

effective until the costs and disbursements of this action, and any and all future defaults under the aforesaid bond or note and mortgage, and occurring prior to the discontinuance of this action are fully paid.

25.     That to protect its security afforded by said bond or note and mortgage, it may be necessary for the plaintiff to pay taxes, assessments and water rates which are, or may become liens on the mortgaged premises, and any other charges for the protection of the premises, and plaintiff hereby demands that any amounts which may be so expended shall be added to the amount of the principal sum secured by said bond or note and mortgage, together with interest from the time of any such payment, and that the same be paid to the plaintiff from the proceeds of the foreclosure sale herein.

26.     That the plaintiff alleges that no other proceedings have been had for the recovery of the mortgage indebtedness or if any such action is pending, a final judgment was not rendered in favor of Plaintiff and such action is intended to be discontinued.

27.     That plaintiff further alleges that all the defendants have, or may claim to have, some interest in, or lien upon the mortgaged premises, or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of the mortgage being foreclosed.

28.     The description of each of the named party defendants interest is set out on Schedule "B" annexed.

29.     The interest or lien of each of the named party defendants, if any, is set forth in Schedule "C" annexed.

30.     The terms of said mortgage provide that defendants shall be liable to plaintiff for reasonable attorneys' fees incurred by plaintiff to protect or enforce plaintiff's security interest in

18-131588- GaM

the premises.

31.     That the sale of the mortgaged premises and title thereto are subject to the state of facts an accurate survey will show; all covenants, restrictions, easements, agreements and reservations, if any, of record, and to any and all violations thereof; any and all building and zoning regulations, restrictions and ordinances of the municipality in which said premises are situated, and to any violations of the same, including, but not limited to, reapportionment of lot lines, and vault charges, if any; any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and any violation of the same; the physical condition of any building or structure on the premises as of the date of closing hereunder; rights of tenants in possession, if any; prior mortgages and judgments, if any, now liens of record; right of Redemption of United States of America, if any;  rights of any defendants pursuant to CPLR Section 317, CPLR Section 2003 and CPLR Section 5015, if any; any and all Hazardous Materials in the premises including, but not limited to, flammable explosives, radioactive materials, hazardous wastes, asbestos or any material containing asbestos, and toxic substances; and other conditions as set forth in the terms of sale more particularly to be announced at the sale.

32.     No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of said Mortgage or for recovery of the said sum secured by said Note and Mortgage or any part thereof.

**WHEREFORE,** the Plaintiff demands judgment against the Defendant and each of them as follows:

A)     Determining the amount due Plaintiff pursuant to the Note,  and Mortgage; and

18-131588- GaM

B)   Awarding Plaintiff any sums paid to protect its security, including interests, expenses, costs, late charges and attorney's fees and costs, to the fullest extent allowed by law; and

C)   Foreclosing the mortgage and sell the Property securing the indebtedness in one parcel at public auction, and the money due to Plaintiff be paid from the proceeds of the sale to satisfy Plaintiff's mortgage lien, if the sums due Plaintiff under the Note, and Mortgage are not paid immediately; and

D)   Foreclosing and forever bar the rights, title and interest of any Defendant, or any party claiming by, through, under or against any Defendant named herein or hereafter made a Defendant be forever barred and foreclosed; and

E)   Appointing a receiver of the rents and profits of the Property during the pendency of this action with the usual powers and duties; and

F)   In the event that Plaintiff possesses any other lien(s) against the Property either by the way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged into Plaintiffs cause(s) of action set forth in this complaint but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and

G)   That Plaintiff may be paid the amount due on said note and mortgage as alleged herein, together with interest to the time of such payment, together with the sums expended by plaintiff prior to and during the pendency of this action, and for thirty days after any sale demanded herein for taxes, water rates, sewer rents,

18-131588- GaM

assessments, insurance premiums and other necessary and essential charges or expenses in connection therewith to protect the mortgage lien, plus any sums expended for the protection or preservation of the property covered by said mortgage and note, and the amount secured thereby, with interest thereon from the time of such payment and the costs and expenses of this action including reasonable attorneys' fees so far as the amount of such monies properly applicable thereto will pay the same; and

H)  that the Defendant(s) FABIOLA MONITSSOL may be adjudged to pay the whole residue (unless discharged of this debt by the United States Bankruptcy Court), or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds pursuant to the directions contained in such judgment

I)  That the Property be sold subject to the state of facts an accurate survey will show; all covenants, restrictions, easements, agreements and reservations, if any, of record, and to any and all violations thereof; any and all building and zoning regulations, restrictions and ordinances of the municipality in which said premises are situated, and to any violations of the same, including, but not limited to, reapportionment of lot lines, and vault charges, if any; any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and any violation of the same; the physical condition of any building or structure on the premises as of the date of closing hereunder; rights of tenants in possession, if any; prior mortgages and judgments, if any, now liens

18-131588- GaM

of record; right of Redemption of United States of America, if any; rights of any defendants pursuant to CPLR Section 317, CPLR Section 2003 and CPLR Section 5015, and/or comparable federal rules of procedure, if any; any and all Hazardous Materials in the premises including, but not limited to, flammable explosives, radioactive materials, hazardous wastes, asbestos or any material containing asbestos, and toxic substances; and other conditions as set forth in the terms of sale more particularly to be announced at the sale; and

J) That the monies arising from the sale may be brought into court; and

K) That the plaintiff be decreed to be the owner of any and all personal property used in connection with the said mortgaged premises; and

L) Appointing a receiver of the rents and profits of the Property during the pendency of this action with the usual powers and duties; and

M) An order compelling that any tenants deliver possession of the premises to Plaintiff; and

N) Awarding the relief requested in the additional causes of action stated in the complaint, if any; and

O) Retaining jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession, if borrower has not been discharged in bankruptcy; and

18-131588- GaM

P)      Granting such other relief as may be just and equitable in the circumstances.

Dated: March _16_, 2018
        Westbury, New York

                              Yours, etc.
                              RAS Boriskin, LLC,
                              Attorneys for Plaintiff

                              By: _Daniel Greenbaum_
                              Daniel Greenbaum, Esq.
                              900 Merchants Concourse, Suite 106
                              Westbury, NY 11590
                              Telephone: 516-280-7675
                              Fax: 516-280-7674

18-131588- GaM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NATIONSTAR MORTGAGE LLC, D/B/A MR.
COOPER

                            Plaintiff,

            -against-


FABIOLA MONTISSOL,

"JOHN DOE #1" through "JOHN DOE #12," the
last twelve names being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
premises described in the Complaint,

                            Defendants.
-------------------------------------------------------------------X


                    **<u>COMPLAINT</u>**



                    RAS Boriskin, LLC
                   Attorneys for Plaintiff
              Daniel Greenbaum, Esq.. (8493)
         900 Merchants Concourse, Suite 106
                   Westbury, NY 11590
                Telephone: 516-280-7675
                Facsimile: 516-280-7674






18-131588- GaM





**Copy**

**Schedule A Description**

Page   1

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Moleston, Town of Ramapo, County of Rockland and State of New York, as shown on a certain map of the lands of Elizabeth Elliott made by Frederick Washburn, C.E., September 1923 and revised September 1924, and is bounded and described as follows:

BEGINNING at a point on the southerly line of Elliot Place, distant easterly and southerly 493.25 feet from the corner formed by the intersection of the southerly side of Elliot Place and the easterly side of Main Street;

RUNNING THENCE South 16 degrees 45 minutes 00 seconds West 88.00 feet;

THENCE South 73 degrees 00 minutes East 100.00 feet;

THENCE North 16 degrees 51 minutes 17 seconds East 80.00 feet to the southerly side of Elliot Place, westerly along the southerly of Elliot Place;

THENCE North 68 degrees 26 minutes 06 seconds West 100.50 feet to the point or place of BEGINNING.



**Copy**

## NOTE   Loan Number:

APRIL 4, 2005                          VALHALLA                          NEW YORK
[Date]                                    [City]                                [State]

6 ELLIOTT PLACE, SPRING VALLEY, NEW YORK 10977
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $225,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is COLUMBIA HOME LOANS, LLC
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.875 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
(A)  Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   1st   day of each month beginning on JUNE 1 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 400 COLUMBUS AVENUE, VALHALLA, NEW YORK 10595
or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $1,330.96            .

**4.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Borrower Initials: _____   _____   _____   _____

NEW YORK FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01

Page 1 of 3

DocMagic<b>eFermt</b> 800-649-1362
www.docmagic.com

**Copy**

**5.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**
  (A)  Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
    2.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
  (B)  Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
  (C)  Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
  (D)  No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
  (E)  Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials: _____  _____  _____  _____  _____

NEW YORK FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Page 2 of 3
Form 3233 1/01

DocMagic ℰℱℴ𝓇𝓂𝓈  800-649-1362
www.docmagic.com

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Fabiola Montibol_ (Seal)
FABIOLA MONTIBOL   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

NEW YORK FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3233 1/01                           Page 3 of 3

DocMagic €Forms 800-649-1362
www.docmagic.com

Copy

## ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE.   THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE:

NOTE DATE:  APRIL 4, 2005          ORIGINAL PRINCIPAL: $225,000.00

BORROWER NAME:  FABIOLA MONTISSOL

PROPERTY ADDRESS:  6 ELLIOTT PLACE, SPRING VALLEY, NEW YORK 10977

---

PAY TO THE ORDER OF

_____, without recourse.


COLUMBIA HOME LOANS, LLC.

By: _____
    MITCHELL S. LEVINE,
    VICE PRESIDENT



**Copy**

**Ed Gorman, County Clerk**
1 South Main St Ste 100
New City, NY 10956
(845) 638-5221

## Rockland County Clerk Recording Cover Sheet

**Received From :**
NEW AGE TITLE AGENCY INC
700 WHITE PLAINS RD
SCARSDALE NY 10583

**Return To :**
COLUMBIA EQUITIES LTD
400 COLUMBUS AVENUE
VALHALLA, NY 10595

**First GRANTOR**

MONTISSOL, FABIOLA

**First GRANTEE**

COLUMBIA HOME LOANS LLC

**Index Type :** Land Records

**Instr Number : 2005-00030427**

**Book :**          **Page :**

**Type of Instrument :** Mortgage
**Type of Transaction :** Mtg Type B

**Recording Fee :**              $78.00

**Recording Pages :**              17

The Property affected by this instrument is situated in Ramapo, in the County of Rockland, New York

### Mortgage Taxes

| | |
|---|---|
| Property Located : | Ramapo |
| Serial Number : | CW3688 |
| Mortgage Amount : | $225,000.00 |

| | |
|---|---|
| Basic Tax : | $1,125.00 |
| Local Tax : | $562.50 |
| Additional Tax : | $645.00 |
| Transportation Auth Tax : | $562.50 |
| SONYMA : | $0.00 |
| Total : | $2,895.00 |

| | |
|---|---|
| Total Fees : | $2,973.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 06/07/2005

At (Recorded Time) : 4:50:45 PM

Doc ID - 013093500017

Ed Gorman, County Clerk



This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: TAN  Printed On : 06/13/2005  At : 4:52:46PM

Copy

Mortgage Recording Tax:

After Recording Return To:
COLUMBIA HOME LOANS, LLC
400 COLUMBUS AVENUE
VALHALLA, NEW YORK 10595
Loan Number:

S: 50.10
S: 4
L: 39

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A)   "Security Instrument." This document, which is dated   APRIL 4                , 2005,
together with all Riders to this document, will be called the "Security Instrument."
(B)   "Borrower." FABIOLA MONTISSOL

whose address is 6 ELLIOTT PLACE, SPRING VALLEY, NEW YORK 10977
                                                sometimes will be called "Borrower"
and sometimes simply "I" or "me."
(C)   "Lender." COLUMBIA HOME LOANS, LLC

will be called "Lender." Lender is a corporation or association which exists under the laws of
NEW YORK                                                . Lender's address is
400 COLUMBUS AVENUE, VALHALLA, NEW YORK 10595
(D)   "Note." The note signed by Borrower and dated   APRIL 4                , 2005,
will be called the "Note." The Note shows that I owe Lender  TWO HUNDRED TWENTY-FIVE
THOUSAND AND 00/100            Dollars (U.S. $225,000.00        ) plus interest and other
amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
MAY 1,  2035              .
(E)   "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."
(F)   "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G)   "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights
in the Property" sometimes will be called the "Sums Secured."
(H)   "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."
The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                              Page 1 of 15

DocMagic ℮Ⓡorms 800-649-1362
www.docmagic.com

**Copy**

(I)     "Applicable Law."  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J)     "Community Association Dues, Fees, and Assessments."  All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K)     "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)     "Escrow Items."  Those items that are described in Section 3 will be called "Escrow Items."

(M)     "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N)     "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)     "Periodic Payment."  The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P)     "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument.  This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property.  I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)     Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B)     Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C)     Keep all of my other promises and agreements under this Security Instrument and the Note.

### DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (C) below:

(A)     The Property which is located at  6  ELLIOTT  PLACE

                                                              [Street]

SPRING VALLEY                                         , New York  10977

            [City, Town or Village]                                      [Zip Code]

Borrower Initials: _____ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                    Page 2 of 15                         DocMagic ⊕Reston 800-649-1362
                                                                                                      www.docmagic.com

**Copy**

This Property is in    ROCKLAND                    County. It has the following legal description:
SEE ATTACHED ADDENDUM: SECTION 50.10 BLOCK 4 LOT 39

(B)    All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C)    All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D)    All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E)    All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F)    All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G)    All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to; and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:
1.    Borrower's Promise to Pay.  I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note.  I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.
Payments due under the Note and this Security Instrument shall be made in U.S. currency.  If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Borrower Initials:

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                    Page 3 of 15

*DocMagic eForms 800-649-1362*
*www.docmagic.com*

Copy

## Schedule A Description

Page   1

Title Number NA-00126-R-05

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Moleston, Town of Ramapo, County of Rockland and State of New York, as shown on a certain map of the lands of Elizabeth Elliott made by Frederick Washburn, C.E., September 1923 and revised September 1924, and is bounded and described as follows:

BEGINNING at a point on the southerly line of Elliot Place, distant easterly and southerly 493.25 feet from the corner formed by the intersection of the southerly side of Elliot Place and the easterly side of Main Street;

RUNNING THENCE South 16 degrees 45 minutes 00 seconds West 88.00 feet;

THENCE South 73 degrees 00 minutes East 100.00 feet;

THENCE North 16 degrees 51 minutes 17 seconds East 80.00 feet to the southerly side of Elliot Place, westerly along the southerly of Elliot Place;

THENCE North 68 degrees 26 minutes 06 seconds West 100.50 feet to the point or place of BEGINNING.

Copy

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. . Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.     **Application of Borrower's Payments and Insurance Proceeds.**  Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.     **Monthly Payments For Taxes And Insurance.**
(a)     **Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)     The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2)     The leasehold payments or ground rents on the Property (if any);
(3)     The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4)     The premium for Mortgage Insurance (if any);
(5)     The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6)     If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

Borrower Initials: _____

Copy

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b)   Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c)   Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.   Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on

Borrower Initials:

the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance

Borrower Initials: _____

률...

---

Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

Borrower Initials: _____ _____ _____ _____ _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01     Page 7 of 16     DocMagic eForms 800-649-1362 www.docmagic.com

Copy

9.    **Lender's Right to Protect Its Rights in The Property.**  If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property.  Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so.  I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9.  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so.  I will pay interest on those amounts at the interest rate set forth in the Note.  Interest on each amount will begin on the date that the amount is spent by Lender.  This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease.  I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance.  If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer.  However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage.  I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect).  Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered.  The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve.  Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law.  Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument.  Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance policy.

Borrower Initials: _____ _____ _____ _____ _____ _____

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.  Agreements About Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened.  During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due.  The excess, if any, will be paid to me.  Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due.  The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due.  "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument.  "Forfeiture" is a court action to require

Borrower Initials: _____ _____ _____ _____

the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes; or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any

Borrower Initials:

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                              Page 10 of 16

DocMagic €Fₐₘₛ 800-649-1362
www.docmagic.com

prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15.    Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.    Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.    Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18.    Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19.    Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)    I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)    I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)    I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)    I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Borrower Initials:

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                        Page 11 of 15                           DocMagic @fismss 800-649-1362
                                                                                              www.docmagic.com

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20.** **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21.** **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                                    Page 12 of 15                        DocMagic eForms  800-649-1362
www.docmagic.com

are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22.   Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)   I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)   Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1)   The promise or agreement that I failed to keep or the default that has occurred;
(2)   The action that I must take to correct that default;
(3)   A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4)   That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5)   That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6)   That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)   I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.   Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires.

Borrower Initials: _____

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01
Page 13 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

Copy

Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24.** **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25.** **Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

'☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 15 of this Security Instrument and in any Rider signed by me and recorded with it.

_Fabiola Montissol_ (Seal)
FABIOLA MONTISSOL          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Witness:                    Witness:

_____       _____

Copy

State of New York.        )
                          ) ss.:
County of  WESTCHESTER    )

On the 4 th  day of  APRIL          in the year 2005  , before me, the undersigned,
personally appeared.  FABIOLA MONTISSOL

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
Notary Public State of New York

_____
Print or Type Name

(Seal, if any)                      My Commission Expires:

Tax Map Information No.:

*Karrie C. Bell*
*Notary Public State of New York*
*no. 01BE5088552*
*Qualified in Rockland County*
*Commission Expires July 20, 2005*

NEW YORK--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Form 3033 1/01                                      Page 15 of 15

*DocMagic @Tlemss 800-549-1362*
*www.docmagic.com*



**<u>Assignment of Mortgage:</u>**

| | |
|---|---|
| Assignor: | Columbia Home Loans LLC. |
| Assignee: | Nationstar Mortgage, LLC. |
| Dated: | 01/07/2015 |
| Recorded: | 01/08/2015 |
| Recording Information: | Instrument #: 2015-475 |

18-131588- GaM

Paul Piperato, County Clerk
1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

# Rockland County Clerk Recording Cover Sheet

**Received From :**
NATIONWIDE TITLE CLEARING INC
2100 ALTERNATE 19 NORTH
PALM HARBOR, FL 34683

**Return To :**
NATIONWIDE TITLE CLEARING INC
2100 ALTERNATE 19 NORTH
PALM HARBOR, FL 34683

Method Returned : ERECORDING

**First GRANTOR**

COLUMBIA HOME LOANS LLC

**First GRANTEE**

NATIONSTAR MORTGAGE LLC

Index Type : Land Records
**Instr Number : 2015-00000475**
**Book :**             **Page :**

Orig Instr #: 2005-00030427

Type of Instrument : Assignment Of Mortgage
Type of Transaction : Asmt-Release
Recording Fee:                      $50.50

Recording Pages :                      2

### Recorded Information

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland County,
New York

On (Recorded Date) : 01/08/2015

At (Recorded Time) : 11:57:00 AM

Paul Piperato, County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York
Entered By: NYROCKLANDUSER21  Printed On : 01/08/2015       At : 11:57:53AM
**File Number: 2015-00000475  Seq: 1**

When Recorded Return To:
OceanFirst Bank
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan
Effective Date 12/01/2014

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, COLUMBIA HOME LOANS, LLC, WHOSE ADDRESS IS 975 HOOPER AVENUE, TOMS RIVER, NJ, 08753, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, with all interest secured thereby, all liens, and any rights due or to become due thereon to NATIONSTAR MORTGAGE, LLC, WHOSE ADDRESS IS 350 HIGHLAND DR, LEWISVILLE, TX 75067 (308)220-6855, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 04/04/2005, made by FABIOLA MONTISSOL to COLUMBIA HOME LOANS, LLC, in the principal sum of $225,000.00 and recorded on 06/07/2005, in Liber , Page , CRFN # 2005-30427, in the office of the Registry of ROCKLAND County, NY.

Property is commonly known as: 6 ELLIOTT PLACE,
                                SPRING VALLEY, NY 10977.

This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated this 07th day of January in the year 2015.
COLUMBIA HOME LOANS, LLC

NADINE HOMAN
VICE PRESIDENT

ALYSSA WILLIAMS
WITNESS

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, this 07th day of January in the year 2015, the undersigned, personally appeared Nadine Homan as VICE PRESIDENT for COLUMBIA HOME LOANS, LLC, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ALYSSA VILLALOBOS – NOTARY PUBLIC
COMM EXPIRES: 10/02/2018

ALYSSA VILLALOBOS
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF165490
Expires 10/2/2018

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
Property(S/B/L)
OFBAS                                    $50.50 DOCR          [C-1] EFRMNY1

File Number: 2015-00000475  Seq: 2